**KOLLER LAW LLC**
David M. Koller, Esq. (037082002)     *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **CANDACE MCDADE,** | : | Civil Action No. |
| **3971D Home Court** | : | |
| **Joint Base MDL, NJ 08641** | : | |
|       Plaintiff, | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| **COMMUNITY OPTIONS, INC.,** | : | |
| **202 North Main Street** | : | |
| **Forked River, NJ 08731** | : | |
| | : | |
| **16 Farber Road** | : | |
| **Princeton, NJ 08540** | : | |
|       Defendant. | : | |

### CIVIL ACTION

Plaintiff, Candace McDade (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Community Options, Inc., (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, ("Title VII"), as amended, and the New Jersey Law Against Discrimination ("NJLAD"). In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Community Options, Inc. is a national nonprofit organization that develops housing and employment opportunities for people with developmental

disabilities with a location at 202 Main North Street, Forked River, NJ 08731 and with a headquarters located at 16 Farber Road, Princeton, NJ 08540.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure

because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the District of New Jersey pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because some of the Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under Title VII and the NJLAD.

13. Plaintiff timely filed a Complaint of Discrimination ("Complaint") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation against Defendant.

14. The Complaint was assigned a Charge Number of 530-2020-04933 and was dual filed with the New Jersey Division on Civil Rights ("NJDCR").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated May 14, 2021. Plaintiff received the notice by electronic mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY WITH DEFENDANT

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff is African American.

21. On April 1, 2019, Defendant hired Plaintiff in the position of Behaviorist at Defendant's Moorestown's location.

22. Plaintiff was well qualified for her position and performed well.

### PLAINTIFF'S CAUCASIAN COWORKER FREQUENTLY USED THE N WORD AROUND HER AND DEFENDANT REFUSED TO ADDRESS IT

23. At the start of Plaintiff's employment, Hillaire Pilhert (Caucasian), House Manager, regularly used the N word.

24. In May 2019, Plaintiff complained to Samantha Austin (Caucasian), Board Certified Behavior Analyst ("BCBA") and Plaintiff's supervisor, about Ms. Pilhert's constant use of the N word.

25. However, Ms. Austin refused to address Plaintiff's complaint and Ms. Pilhert continued to frequently use the N word at Defendant.

### PLAINTIFF'S AFRICAN AMERICAN COWORKER RESIGNED DUE TO MS. PILHERT'S FREQUENT USE OF THE N WORD

26. In or around the summer of 2019, Joselyn Crews (African American), Manager, quit after Defendant refused to address her complaints of Ms. Pilhert repeatedly using the N word.

### PLAINTIFF COMPLAINED AGAIN ABOUT MS. PILHERT'S REPEATED USE OF THE N WORD, AND DEFENDANT NOT ONLY REFUSED TO ADDRESS IT BUT DEEMED IT ACCEPTABLE

27. In the end of September 2019, Plaintiff complained to Maddie Loban (Caucasian), Executive Director, about Ms. Pilhert's constant use of the N word.

28. However, Ms. Lobban did not address Plaintiff's complaint.

29. Instead, she told Plaintiff that she was being too sensitive and stated that if African Americans can say the N word, that Caucasians should be able to as well.

30. Plaintiff found Ms. Lobban's response to be incredibly offensive and discriminatory.

31. Ms. Lobban proceeded to then send an email stating that it was acceptable for employees to use the N word at Defendant.

32. Plaintiff was shocked and appalled by this email.

### DEFENDANT PROCEEDED TO RETALIATE AGAINST PLAINTIFF

33. Following Plaintiff's complaint to Ms. Lobban, both she and Claudia Caetano (Caucasian), Assistant Executive Director, began to retaliate against Plaintiff by constantly nitpicking her work product and her work attire.

34. Plaintiff had no issues with her job performance or work attire before this.

### PLAINTIFF WITNESSED MS. LOBBAN ENGAGE IN OTHER RACIALLY DISCRIMINATORY CONDUCT

35. Ms. Lobban also frequently referred to African American staff as unintelligent and ignorant.

36. Plaintiff believed that Ms. Lobban's comments were made towards race.

### MS. PILHERT CONTINUED HER REGULAR USE OF THE N WORD

37. In addition, Ms. Pilhert continued to use the N word at Defendant.

### PLAINTIFF COMPLAINED ABOUT MS. PILHERT'S USE OF THE N WORD FOR A THIRD TIME, BUT DEFENDANT DID NOT ADDRESS HER COMPLAINT

38. On January 28, 2020, Plaintiff complained to Ms. Lobban and Ms. Caetano again about Ms. Pilhert's constant use of the N word.

39. However, Ms. Lobban instructed Plaintiff to "get used to it."

40. Neither Ms. Lobban nor Ms. Caetano properly addressed Plaintiff's complaint and Ms. Pilhert continued to regularly use the N word.

41. Ms. Lobban and Ms. Caetano continued to retaliate against Plaintiff.

### **DEFENDANT CONTINUED TO RETALIATE AGAINST PLAINTIFF BY TRANSFERRING HER TO A DIFFERENT LOCATION**

42. On March 1, 2020, Ms. Austin transferred Plaintiff to its Forked River location due to Ms. Lobban's allegations that Plaintiff was rude to clients. These allegations were false

43. These fabricated allegations and subsequent transfer was done out of retaliation for her complaints of race discrimination.

44. Ms. Austin continued by informing Plaintiff that the transfer would be good for her.

45. Plaintiff took this to mean that her employment would be in jeopardy if she did transfer to Defendant's Forked River location.

46. Upon accepting the transfer, Ms. Austin informed Ms. McDade that she was going to "give them what they want." Ms. Austin was referring to the Caucasian therapist that Ms. McDade would be working for in Ocean County.

47. Plaintiff found it peculiar and suspicious that Ms. Austin specifically mentioned the Therapist's race to her.

48. Even after this transfer, in April 2020, Ms. Caetano praised Rebecca Morris (Caucasian), Behaviorist, for Plaintiff's work product, because she did not realize it was Plaintiff's.

49. This transfer required Plaintiff to have a significant and unnecessarily long commute.

### **PLAINTIFF WAS CONSTRUCTIVELY DISCHARGED**

50. In early May 2020, Plaintiff submitted her resignation to Ms. Austin due to Defendant's discriminatory and retaliatory conduct.

51. May 15, 2020, was Plaintiff's last day working at Defendant. She was constructively discharged.

52. It is Plaintiff's position that she was discriminated against due to her race and retaliated against for reporting the aforementioned discrimination in violation of Title VII.

## COUNT I – RACE DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

53. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

54. Plaintiff is a member of protected classes in that she is African American.

55. Plaintiff was qualified to perform the job for which she was hired.

56. Plaintiff suffered adverse job actions, including, but not limited to constructive discharge.

57. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

58. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

59. Defendants discriminated against Plaintiff on the basis of race.

60. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

61. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – RACE DISCRIMINATION
## NEW JERSEY LAW AGAINST DISCRIMINATION

62. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

63. The foregoing conduct by Defendants constitutes unlawful discrimination against Plaintiff on the basis of her race (African American).

64. As a result of Defendant's unlawful race discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

65. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

66. Plaintiff engaged in activity protected by Title VII when she internally complained about race discrimination.

67. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, constructive discharge.

68. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IV – RETALIATION
## NEW JERSEY LAW AGAINST DISCRIMINATION

69. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

70. Plaintiff engaged in activity protected by the NJLAD when she internally complained about race discrimination.

71. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but

not limited to, constructive discharge.

72. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Candance McDade, requests that the Court grant her the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII and the NJLAD.

(j) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

  (l)  Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

                **RESPECTFULLY SUBMITTED,**

                **KOLLER LAW, LLC**

Date: July 7, 2021    **By:** */s/ David M. Koller*
                David M. Koller, Esquire (037082002)
                2043 Locust Street, Suite 1B
                Philadelphia, PA 19103
                215-545-8917
                davidk@kollerlawfirm.com

                *Counsel for Plaintiff*